UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS WALLACE,
     Plaintiff,
     v.

SUSAN MCCAULEY, CURTINA
JONES, LAURA BROWN,
WRIGHT,
     Defendants.
_____/

Case No. 22-12530

Susan K. DeClercq
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT (ECF Nos. 46, 48)**

## I.    PROCEDURAL HISTORY

Plaintiff Dennis Wallace filed this civil rights case without the assistance of counsel on October 20, 2022.  (ECF No. 1).  Defendant Laura Brown filed her motion for summary judgment on September 20, 2023.  (ECF No. 46).  Defendants Curtina Jones, Susan McCauley, and Wright filed a motion for summary judgment on September 22, 2023.  (ECF No. 48).  Both motions are fully briefed.  (ECF Nos. 54-57).  This case was referred to the undersigned for all pretrial proceedings.  (ECF No. 58).

For the reasons discussed below, the undersigned recommends that Defendants Curtina Jones, Susan McCauley, and Wright's motion for summary

judgment be **GRANTED**.  The undersigned also recommends Defendant Laura

Brown's motion for summary judgment be **GRANTED IN PART**.

## II.    FACTS

Plaintiff is a prisoner currently housed at the Saginaw Correctional Facility

within the Michigan Department of Corrections ("MDOC").  (ECF No. 56,

PageID.726).  On October 18, 2021, he injured himself while exercising in the

weight pit using 80-pound weights.  (*Id.* at PageID.726), (ECF No. 1, PageID.79),

(ECF No. 48-4, PageID.635).  He reported his pain to Correctional Officer Martin,

and, on Officer Martin's instruction, submitted a healthcare request.  (ECF No. 1,

PageID.79).[1]  His pain kept worsening and he yelled out because of the pain.  (ECF

No. 56, PageID.727).  He began taking Celebrex and Naproxen and attempted to

stretch and use heat to alleviate the pain, though nothing helped.  (ECF No. 1,

PageID.78, 87), (ECF No. 56, PageID.727), (ECF No. 46-1, PageID.469).

Throughout the night, his yelling attracted the attention of other inmates.  (*Id.*).  As

of October 19, 2021, Wallace's complaints to healthcare were recorded in the

MDOC Logbook, but he was not seen by healthcare.  (ECF No. 48-3, PageID.630),

(ECF No. 1, PageID.4).

---

[1] Allegations in a verified complaint have, for summary judgment purposes, the same force as
those in an affidavit.  *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (internal citations
omitted).  Since Plaintiff filed a verified complaint, his allegations will be taken as evidence.

On October 20, 2021, he was examined by Defendant Gross and Defendant Brown.  (ECF No. 56, PageID.727).  Defendant Gross noticed he had no swelling, but that he was moaning and hollering in pain.  (*Id.*); (ECF No. 1, PageID.80).  She also noticed that he had a lateral gluteal muscle cramp when he sat upright to take medications and that he moaned in pain when he was lying supine on the exam table.  (ECF No. 1, PageID.80).  Defendant Gross granted him a bottom bunk accommodation, a wooden cane detail, and ice three times a day.  (ECF No. 46-1, PageID.471).  Defendant Brown examined Plaintiff and retained him "in medical for observation," and noticed he was "urinating without difficulty."  (ECF No. 1, PageID.82), (ECF No. 46-2, PageID.587).  At some point after her exam, Defendant Brown told Plaintiff to return to his unit.  (ECF No. 1, PageID.7).  Plaintiff requested instead to be seen by Dr. Oliver, who then assessed Plaintiff "concurrently" with Brown.  (ECF No. 1, PageID.7).  They noticed his spasms "impair his sitting and laying," and "he can't sit down," though he can "twist side to side and lean back, but is unable to bend at all forward."  (ECF No. 1, PageID.82), (ECF No. 46-1, PageID.474), (ECF No. 56, PageID.727).  Defendant Brown said Plaintiff would be sent "out to local ER via EMS for further pain management and imaging."  (ECF No. 56, PageID.727), (ECF No. 46-1, PageID.470, 474).  He was then taken to Ascension St. Mary's Hospital ("St. Mary's") by ambulance.  (ECF No. 1, PageID.83), (ECF No. 56, PageID.727).

At St. Mary's, he was diagnosed with sciatica and prescribed topical Lidoderm patches, Ketorolac, Valium, and Prednisone. (ECF No. 46-1, PageID.482-484); (ECF No. 1, PageID.59-62). He was instructed to apply Lidoderm to the affected area once a day and to take Prednisone once a day from October 20, 2021 to October 29, 2021. (ECF No. 46-1, PageID.481). He was also told to take one tablet of Ketorolac four times a day as needed for pain and one tablet of Valium multiple times a day, both from October 20, 2021 to October 24, 2021. (*Id.*).

When he returned from the hospital, Defendant Brown reviewed his records and noted he had been approved for Tylenol #3 and Robaxin. (ECF No. 1, PageID.57). She also recognized he "returns from the hospital with orders for Valium, Prednisone, Lidoderm, & Ketorolac." (ECF No. 46-1, PageID.498).

Defendant Brown ordered Prednisone but deferred his Valium, Lidoderm, and Ketorolac prescriptions. (*Id.* at PageID.588). She explained to him that she chose to grant him Tylenol 3 rather than Valium because Valium must be swallowed whole, whereas prison practice often indicates crushing medications of potential abuse. (ECF No. 46-2, PageID.588-589).

When he returned from the hospital, he also spoke with Officer Wright about what room he could move to in order to receive a bottom bunk. (ECF No. 1, PageID.6). At the time, Plaintiff resided on a top bunk. (ECF No. 46-1,

4

PageID.469).  Defendant Wright was a Corrections Officer at the Saginaw Correctional Facility.  (ECF No. 48-5, PageID.638).  As a Corrections Officer, she lacked authority to move Plaintiff to a different bunk or different cell.  (ECF No. 48-5, PageID.638).  Her role dictated that she contact the Command Center and Shift Command, who then determined where the prisoner will move, which they often do "within just a few hours." (*Id.*).  But after she was given a copy of his bottom bunk detail, she "ordered Plaintiff off the base floor and instructed him to get upon his top bunk the best way that he could." (ECF No. 1, PageID.11).  He also claims she told him to get off her base, after which he was forced to climb onto his top bunk, which caused him to fall many times and was difficult and painful. (*Id.* at PageID.5-6).  In any event, on October 21, 2021, the same day he was granted the bottom bunk detail, he was assigned a bottom bunk.  (ECF No. 48-2, PageID.625).

On October 23, 2021, he claims Defendant Brown made him take off his prescribed Lidoderm patch because she wanted to prevent him from selling it and refused him his Valium prescription for the same reason.  (ECF No. 1, PageID.6).  He also claimed she refused to renew his Tylenol prescription for more than three days and refused to raise the dosage of Naproxen.  (*Id.*).

On October 27, 2021, Plaintiff told Defendant Brown that his pain was not controlled despite the Tylenol.  (ECF No. 1-1, PageID.102).  He also requested a

urinal, which Defendant Brown refused.  (ECF No. 46-2, PageID.588).  He had

spoken with Defendant Jones about difficulty urinating and told her "he stop[ped]

drinking water cause [sic] he didn't want to pee on himself and the pain of getting

up."  (ECF No. 46-1, PageID.504).  Defendant Brown told him "he was able to

walk and was not bedbound . . . [and] a urinal was not medically indicated."  (ECF

No. 46-2, PageID.588).  Though he complained of an episode of incontinence, she

told him "a urinal was not for incontinence" and that he could use "adult

briefs/pads."  (*Id.*).  Plaintiff also told her his pain was not alleviated, and she told

him he could use Naproxen after his dose of Prednisone was over, and that he

could use Tylenol 325 mg until the Prednisone ended.  (*Id.* at PageID.589).

On November 13, 2021, Plaintiff submitted a health care request stating his

"wooden cane [detail] is close to expiring and [his] bottom bunk detail has already

expired."  (ECF No. 1, PageID.23).  He claimed he was still unable to climb up on

a top bunk and still needed the aid of a wooden cane.  (*Id.*).

Plaintiff brought Eighth Amendment claims against all defendants, arguing

they exercised cruel and unusual punishment by acting with deliberate indifference

to inflict pain on him.  (*Id.* at PageID.10).  In particular, he claimed Defendants

McCauley, Jones, and Brown were indifferent to his right to medical treatment and

interfered with medications prescribed by a medical professional.  (*Id.* at

PageID.11).  He also claims Defendant Wright knew Plaintiff faced a substantial

risk of serious harm if he was assigned a top bunk but failed to take reasonable

measures to get him a bottom bunk.  (*Id.* at PageID.11-12).

## III.   BACKGROUND

In her motion for summary judgment, Defendant Brown claims there is no

genuine dispute of material fact as to Plaintiff's deliberate indifference claim.

(ECF No. 46, PageID.458).  This is because not only does deliberate indifference

entail more than negligence, but also because courts are reluctant to second guess

medical judgments.  (ECF No. 46, PageID.459).  She also argues Plaintiff cannot

prove that he received no treatment or that his treatment was inadequate.  (*Id.* at

PageID.460-461).  Finally, Defendant Brown argued Plaintiff cannot show she

chose to disregard any risk to him by failing to take reasonable measures to abate

his condition.  (*Id.* at PageID.464).

In their motion for summary judgment, Defendants Jones, Wright, and

McCauley argue Plaintiff cannot bring any official capacity claims for monetary

damages because they are barred by the Eleventh Amendment.  (ECF No. 48,

PageID.609-610).  They also argue Defendant Jones was not personally involved

in any constitutional violations because she is not a medical provider according to

MDOC policy, and because she followed MDOC policy outlining how to arrange

appointments for inmates to be seen by healthcare providers.  (*Id.* at PageID.614-

616).  Next, they argue Defendant Wright lacked authority to move prisoners to

different cells or bunks, and that she did notify proper authorities to move Plaintiff to a bottom bunk and was unaware of any substantial risk of serious harm if Plaintiff was not placed on a bottom bunk. (*Id.* at PageID.615-617). Because of this, she claims she was not deliberately indifferent to his conditions. (*Id.* at PageID.615-618). Finally, they argue Plaintiff offers no facts to assert a claim against Defendant McCauley, and that any claim against her is based on a theory of respondeat superior, which does not trigger constitutional protections. (*Id.* at PageID.618-19).

In his response, Plaintiff agrees that the Eleventh Amendment bars any official capacity claims and strikes these claims. (ECF No. 56, PageID.720). He also dismisses all MDOC defendants other than Defendant Wright. (*Id.* at PageID.710).

## IV.    ANALYSIS AND RECOMMENDATIONS

### A.    Governing Standards

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light

most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a

showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56.  Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

    B.   <u>Discussion</u>

        i.    Voluntary Dismissal

Plaintiff seeks to voluntarily dismiss Defendants Jones and McCauley.  This dismissal must be by Court order because Plaintiff's notice of the dismissal comes after the Defendants moved for summary judgment and the parties did not submit a stipulation of dismissal.  Fed. R. Civ. P. 41(a)(1)-(2).  Here, dismissal of Defendants McCauley and Jones is appropriate and recommended.

Plaintiff also seeks to terminate any official capacity claims against all defendants.  (ECF No. 56, PageID.710).  Dismissal of these claims is also recommended per Fed. R. Civ. P. 41(a)(1)-(2).

      ii.    Defendant Wright

Plaintiff claims he has alleged facts sufficient to support an Eighth Amendment violation against Defendant Wright.  (ECF No. 56, PageID.720).  He claims she was aware he had just returned from the hospital, read the bottom bunk detail, and then spoke with him in a hostile manner and refused to grant him a bottom bunk, telling him instead he "just [has] to get on [his] bunk the best way [he] can." [2]  (*Id.* at PageID.720).  He also alleges Defendant Wright had subjective knowledge of the risk of harm to Plaintiff, which she disregarded.  (ECF No. 1, PageID.11).  By failing to take reasonable measures to abate the risk of harm

---

[2] In his response brief, Plaintiff claims Defendant Wright yelled and cursed at him in a hostile manner, that she knew of his injury, cane accommodation, elevator accommodation, and knew that he struggled to walk. (ECF No. 56, PageID.720).  The allegation about Wright yelling and cursing is unsupported by admissible evidence.  Statements in a response brief are not evidence.

created by using the top bunk, and not contacting the proper authorities, he claims

Defendant Wright personally disregarded any harm to Plaintiff and that Defendant

Wright's actions caused his injury to become more severe.  (*Id.* at PageID.11-12).

Defendant Wright claims she took the only steps she could within the policy,

and that she had no authority to move Plaintiff to a different cell or bunk.  (ECF

No. 48, PageID.616).  She also states that she is not part of the medical staff "in

any way" and that she cannot be responsible for treating his illness or injury.  (*Id.*).

"The Constitution 'does not mandate comfortable prisons.'"  *Farmer v.

Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337,

349 (1981)).  But it also does not "permit inhumane ones, and it is now settled that

'the treatment a prisoner receives in prison and the conditions under which he is

confined are subject to scrutiny under the Eighth Amendment.'"  *Id.* (internal

citations omitted).  In prohibiting "'cruel and unusual punishments,' the Eighth

Amendment places restraints on prison officials, who may not, for example, use

excessive physical force against prisoners."  *Id.*  (*citing Hudson v. McMillan*, 503

U.S. 1 (1992)).

A prison official's "deliberate indifference" to a substantial risk of serious

harm to an inmate violates the Eighth Amendment.  *Helling v. McKinney*, 509 U.S.

25 (1993); *Wilson v. Seiter*, 501 U.S. 294 (1991).  This deliberate indifference

framework contains both a subjective and objective prong.  *Helling*, 509 U.S. at

25-27.  For the objective prong, an inmate must show "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. For the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.*  It is not sufficient for the official to have acted or failed to act "despite his knowledge of a substantial risk of serious harm," but that "acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 837-842.  Prison officials "who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  *Id.* at 844.  "Mere negligence (or even gross negligence) does not constitute deliberate indifference." *Miller v. Shelby Cty., Tenn.*, 93 F. Supp. 2d 892, 898 (W.D. Tenn. Feb. 29, 2000) (quoting *Farmer*, 511 U.S. at 837).  At the same time, "a prisoner is not required to show that officials had an intent to harm."  *Id.*

First, Plaintiff argues Defendant cannot rely on her affidavit as it is unsworn. (ECF No. 56, PageID.722).  But Defendant's affidavit is signed under penalty of perjury.  (ECF No. 48-5, PageID.639).  A district court may consider, for summary judgment purposes, an un-notarized affidavit if the affiant signs under penalty of perjury, and therefore can rely on her affidavit.  28 U.S.C. § 1746.

Plaintiff cannot prove Defendant Wright knew of and disregarded an excessive risk to his health or safety.  Plaintiff returned to the hospital after midnight with a medical detail indicating his need for a bottom bunk.  (ECF No. 1, PageID.57); (ECF No. 48-5, PageID.638).  He presented this detail to Defendant Wright, and Wright read the detail and was aware of its contents.  (ECF No. 1, PageID.11).  Though she was "aware that Prisoner Wallace had just returned from the hospital" (ECF No. 56, PageID.720); (ECF No. 48-5, PageID.638), as she states, she had "no way to know or understand any medical condition."  (ECF No. 48-5, PageID.639).  The key inquiry then becomes whether Defendant Wright "responded reasonably to th[is] risk." *Farmer*, 511 U.S. at 844.

Though the harm "ultimately was not averted," Wright responded reasonably to the request.  *Farmer*, 511 U.S. at 844.  This is because Defendant Wright "reported the need to Shift Command and Shift Command moved Plaintiff to a bottom bunk" the same day Plaintiff presented her with the request.  (ECF No. 48-5, PageID.639).  She attaches Plaintiff's cell history log which states he was transferred to a bottom bunk on October 21, 2021, and remained on a bottom bunk until January 27, 2022.  (ECF No. 48-2, PageID.625).  Defendant Wright therefore took preventive measures to ensure Plaintiff obtained his accommodation.

When there is evidence supporting the fact that Defendant Wright notified Shift Command of Plaintiff's need for a bottom bunk, it cannot be inferred that

Defendant Wright chose to disregard Plaintiff's safety.  In *Townsel v. Raupp*, 2013 WL 6842474, at *7-8 (E.D. Mich. Dec. 27, 2013), an incarcerated plaintiff received a medical bottom bunk detail from her physician.  She presented the detail to a corrections officer on the same day who, with knowledge of the detail, assigned her to a top bunk.  *Townsel*, 2013 WL 6842474, at *2.  The plaintiff fell while trying to climb to her top bunk and was further injured.  *Id.*  Though plaintiff was not granted a bottom bunk for "a matter of days," the court found "it would be unreasonable to infer that [the officer] chose to disregard a substantial risk to [Plaintiff's] safety," instead, the "ready inference is that the day after [Defendant] was informed of the detail, she acted to reduce [Plaintiff's] risk of injury by filing a bottom-bunk request." *Id.*  Similarly, any delay between Wright receiving the detail and Plaintiff being placed on a top bunk does not show Wright disregarded Plaintiff's safety.

And Wright stated she "had no authority to move Plaintiff to a different bunk or a different cell."  (ECF No. 48-5, PageID.638).  As in *Townsel*, where the record "strongly implies that [the officer] needed approval from her supervisor . . . before moving [Plaintiff] to a bottom bunk . . . [a] reasonable jury . . . could not conclude that [Defendant] chose to disregard a substantial risk to [Plaintiff's] health or safety." *Townsel*, 2013 WL 6842474, at *1.  Plaintiff was also moved to

a bottom bunk later that day.  Plaintiff cannot establish the subjective component of a deliberate indifference claim.

Finally, Plaintiff argues Defendant Wright caused his injury to become worse.  But he offers no evidence of his injury worsening.  Because there is no evidence establishing Defendant Wright engaged in deliberate indifference, the undersigned suggests that Defendant Wright's motion be granted.

### ii.    Defendant Brown

Plaintiff argues Defendant Brown made him remove his Lidoderm patch, failed to give him Valium, did not renew his Tylenol prescription after three days, did not raise his Naproxen dosage, and refused to allow him a urinal.  (ECF No. 1, PageID.6-8).  He also argues Defendant Brown examined him and instructed him to return to his unit rather than find that "there was something terribly wrong with [his] body."  (*Id.* at PageID.6-8).  In doing so, he argues Defendant Brown was deliberately indifferent to his medical needs and that the "delay in provision of medical treatment for painful conditions . . . can support a deliberate indifference claim, so long as the medical condition is sufficiently serious or painful."  (*Id.* at PageID.11).

Defendant Brown argues "[d]eliberate indifference entails more than mere negligence," and that federal courts "are generally reluctant to second guess medical judgments."  (ECF No. 46, PageID.459) (internal citations omitted).  In

particular, she claims she provided him with treatment from the onset of his injury, gave rationale for not providing him Valium, and explained to him that a urinal was not medically necessary by his condition. (*Id.* at PageID.461). She also argues Plaintiff needs to "introduce 'expert medical evidence describing what a competent doctor would have done and why the chosen course was not just incompetent but grossly so.'" (*Id.* at PageID.463) (internal citations omitted).

When a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." *Richmond v. Huq*, 885 F.3d 928, 940 (6th Cir. 2018). An inmate's "disagreement with the testing and treatment he has received . . . does not rise to the level of an Eighth Amendment violation." *Dodson v. Wilkinson*, 304 F. App'x 434, 440 (6th Cir. 2008) (citing *Estelle*, 429 U.S. at 107). Nor does "a desire for additional or different treatment . . . suffice to support an Eighth Amendment claim." *Rhineheart v. Scutt*, 894 F.3d 721, 740 (6th Cir. 2018) (internal citations omitted). Plaintiff must show his care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (6th Cir. 1989)). In *Comstock v. McCray*, the Sixth Circuit held that "[t]he requirement that the official have subjectively perceived a risk of harm and then disregarded it is means to prevent the constitutionalizing of medical malpractice claims; thus, a

17

plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."  273 F.3d 693, 703 (6th Cir. 2001).

First, Plaintiff's delayed treatment claim fails.  "[A]n inmate's right to medical care that is not unreasonably delayed has been clearly established." *Murray v. Dep't of Corr.*, 29 F.4th 779, 790-791 (6th Cir. 2022).  "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed."  *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (abrogated on other grounds by *Lawler as next friend of Lawler v. Hardeman Cty., Tenn.*, 93 F.4th 919 (6th Cir. 2024)).  Plaintiff must "show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame."  *Id.*  (where a prisoner suffered for two days after a nurse identified classic signs of appendicitis, he presented sufficient evidence from which a jury can infer that prison officials failed to provide adequate treatment in violation of the Eighth Amendment). Plaintiff cannot satisfy this.  There are no facts to indicate Brown delayed treatment; as Plaintiff says, he was seen by Brown and then seen by Dr. Oliver on the same day.  (ECF No. 1, PageID.11-13).  He also cannot show that his condition worsened because of any alleged delay.  (*Id.*).  Though Defendant Brown may have instructed him to return to his cell after observing him in severe pain, he

remained in health care and was examined by Dr. Oliver, after which Dr. Oliver and Defendant Brown sent him to the hospital.  (*Id.*).  These examinations took place on the same day and within a short time frame.  (*Id.*).  Because Brown's initial examination was closely followed by her exam with Dr. Oliver, and he was sent to the hospital, Plaintiff cannot show that the delay was deliberate indifference.

Next, Plaintiff argues Defendant Brown was indifferent to his right to medical treatment because she interfered with medication prescribed by a healthcare professional.  (*Id.* at PageID.11).  He argues she took away the Valium, Ketorolac, and Lidoderm patch he was prescribed at the hospital.  (*Id.*).  He also argues she refused to renew his Tylenol prescription for longer than three days and that she refused to raise his dosage of Naproxen.  (*Id.* at PageID.7).

A reasonable jury could find that Brown's actions were deliberately indifferent.  As she states, she made the decision to "initiate the prednisone order but . . . defer the valium, Lidoderm, & Ketorolac" after reviewing his discharge summary.  (ECF No. 46, PageID.450); (ECF No. 46-1, PageID.491-498).  She provided rationale for part of this decision.  She stated the Valium was nonformulary and had to be swallowed whole, which he could not do at the risk of drug abuse.  (ECF No. 46-2, PageID.589).  She also explained that he could use Naproxen after his dose of Prednisone was complete and did not want him to use

19

the Lidoderm patch because he "could cut it up into strips and sell it." (ECF No. 46-2, PageID.589), (ECF No. 1, PageID.6). She "made the decision to switch the script to Tylenol #3 which could be crushed." (ECF No. 46-1, PageID.506). The change she made was intentional.

Such an "interruption of a prescribed plan of treatment could constitute a constitutional violation." *Boretti v. Wiscomb*, 930 F.2d 1150, 1154 (6th Cir. 1991) (internal citations omitted) (genuine issue of material fact existed when nurse refused to give prescribed medication and dress wound even though Motrin and daily dressing of wound was prescribed by the doctor). *See also Darrah v. Krisher*, 865 F.3d 361 (6th Cir. 2017) (nurse's "failure to ensure the continuity of [Plaintiff's] treatment . . . constitutes deliberate indifference). A "decision to provide an 'easier and less efficacious treatment' may suffice to establish deliberate indifference." *Darrah*, 865 F.3d at 372; *see also McCarthy v. Place*, 313 F. App'x 810, 816 (6th Cir. 2008) (doctor who failed to provide a more effective treatment option "disregarded a risk of serious harm"); *Putman v. Cty. of Tuscola*, 2024 WL 1283779, at *6 (E.D. Mich. Mar. 26, 2024) (Plaintiff alleged that nurse disregarded his serious medical need by showing nurse was aware of Plaintiff's need for specific medication, was aware of the risks if he did not receive it, and chose to dispense a different medication.").

Defendant then argues that Plaintiff needs to provide expert medical evidence to make his claim.  (ECF No. 46, PageID.463).    Defendant relies on *Phillips v. Tangilag*, 14 F.4th 524 (6th Cir. 2021) to support this claim.  (ECF No. 46, PageID.463).  In *Phillips*, the plaintiff brought an Eighth Amendment claim for deliberate indifference when his doctors refused to remove a hematoma in his calf.  14 F.4th at 524.  Plaintiff needed  to bring expert medical evidence because he was proving "that he received grossly inadequate care."  *Phillips* 14 F.4th at 536.  That said, "the factual dispute at the center of" the case below "is not a disagreement about adequacy of treatment in the same sense as *Phillips*."  *Harp v. Hallet*, 2024 WL 1217391 (E.D. Mich. Mar. 21, 2024).  The case here concerns whether Brown interrupted treatment for nonmedical reasons, similar to *Hallet*.  Brown did not exercise her medical judgment, but rejected the treatment prescribed by the hospital providers.  Whereas in *Hallet*, the physician "withheld prescribed treatment for nonmedical reasons . . . the physician has simply interfered with a prescribed course of treatment" and has not "made a 'medical judgment'" as the provider in *Phillips* did.  2024 WL 1217391, at *3.  Because Plaintiff "makes an allegation about an intentional change in treatment for nonmedical reasons, he need not provide expert medical testimony, which would not aid a factfinder in deciding his claims."  *Id.*

Plaintiff sufficiently shows Defendant Brown was aware of his need for the specific prescribed medications.  She was also aware of the risks if he did not take it, as she knew his pain was not controlled despite the Tylenol.  (ECF No. 1-1, PageID.102).  Yet she chose to dispense different medications and refused to increase the dosage of others.  Plaintiff has shown that she may have disregarded a substantial risk.

Brown argues the medications Plaintiff was prescribed were on the drug formulary and not typically dispensed.  Though a medication may be "listed on the drug formulary" and drug formularies may be appropriate methods of controlling concerns, this is not an adequate medical reason for giving a different medication. *Darrah*, 865 F.3d 361, 373 (6th Cir. 2017) (though medication was listed on the drug formulary to control the cost of medical treatment, the "record . . . does not provide any medical reason why" Plaintiff was given a different medication than prescribed, and the decision to provide a "less efficacious" treatment made it such that a reasonable jury could find the defendant disregarded a serious risk of harm).  Because Brown interfered with the course of medication given to Plaintiff by the hospital, with knowledge of his prescribed medications, and without any adequate explanation, there is a genuine dispute about whether she engaged in deliberate indifference.  Brown's motion for summary judgment with respect to this claim should be denied.

Finally, Plaintiff argues Defendant Brown violated his Eighth Amendment rights by refusing him a urinal.  But Plaintiff cannot show a substantial risk of serious harm in absence of the accommodation.  No evidence suggests he needed a urinal, and a urinal was not "medically indicated."  (ECF No. 46-1, PageID.506). Though he experienced "an episode of incontinence," Defendant Brown offered him adult briefs/pads to address this issue.  (ECF No. 1-1, PageID.102).  Plaintiff's disagreement with this course of treatment cannot alone prove deliberate indifference on Defendant Brown's part.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendant Brown motion for summary judgment (ECF No. 46) be **GRANTED IN PART**, that Defendant Wright's motion for summary judgment (ECF No. 48) be **GRANTED**, and that Defendants Jones and McCauley be **DISMISSED**.  The official capacity claims against all Defendants should also be dismissed per Fed. R. Civ. P. 41.  If this report and recommendation is adopted, then the claim against Defendant Brown for interfering with pain medications remains.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 30, 2024.    <u>s/Curtis Ivy, Jr.</u>
               Curtis Ivy, Jr.
               United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on April 30, 2024.

s/Sara Krause
Case Manager
(810) 341-7850